## Case No. 16,666.

### UNITED STATES v. WENDELL et al.

### UNITED STATES v. SAME.

[2 Cliff. 340.] [1]

Circuit Court, D. New Hampshire. Oct. Term, 1864.

NAVY AGENTS — MAXIMUM COMPENSATION — COMMISSIONS ON DISBURSEMENTS—RULE OF COMPUTATION—FORFEITURE OF COMMISSIONS.

1. The appointment of navy agents was first authorized by the act of March 3, 1855 [10 Stat. 676]. By that act the maximum compensation of such officers is fixed at three thousand dollars per annum.

2. Such maximum compensation is in terms based on the period of one year, to be derived from commissions on disbursements, but cannot exceed three thousand dollars, even though the legal rate of commissions on sums actually disbursed, would amount to more than that sum.

3. The amount disbursed does not determine the maximum, but only the proportion of the maximum to which the officer is entitled when his commissions do not reach the maximum amount; and the excess of one year cannot aid the deficiency of another.

4. Annual compensation is the rule of decision, not per quarter nor for any subdivision of a year.

5. Yearly disbursements, as ascertained by the monthly accounts, furnish the means of computing the yearly compensation of the navy agent, with the limitation that the compensation cannot exceed three thousand dollars.

6. Time of service and the amount disbursed furnish the data for computing the amount of compensation for any fractional part of a year, because the maximum being based on an entire calendar year, the proportion due the officer, can only be ascertained by calculating the proportion of the year which may have elapsed.

7. Where an officer of the United States, accountable for public money, refuses to pay into the treasury the sum or balance reported to be due upon the adjustment of his account, under the act of 3d of March, 1797 [1 Stat. 512], the accounting officers of the treasury are authorized to add to such sum only the commissions due the officer on such unsettled account. The statute does not contemplate the forfeiture of all commissions paid such officer upon settled accounts during the whole term of his previous service.

Debt on the official bonds of the defendant as navy agent for the port of Portsmouth, in this district. The declaration in each case was in the usual form as at common law. The bond in the first suit was dated the 25th of August, 1857, and in the second the 24th of May, 1858. The suits were against [Henry F.] Wendell as principal, and the others [Daniel Marcy, Richard Jenness, Thomas E. Oliver, and Albert E. Blaisdell] as sureties in said bonds. The cases were submitted upon facts agreed. The principal defendant was first appointed navy agent on the 1st of September, 1857, in the recess of the senate, and he continued to hold the office and to discharge the duties thereof under the appointment, until the 24th of May, 1858, when he was regular-

1 [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

ly nominated and appointed to the office by and with the advice and consent of the senate, for the term of four years. Under the last appointment he continued to discharge the duties of the office until the 10th of May, 1861, when he was suspended, and another appointed in his stead. The defendants, among other things, pleaded performance. The replication alleged that the principal defendant while in office received large sums of public money, to wit, $12,073.77, and that he had neglected and refused to pay the same into the treasury of the United States. In the rejoinder the defendants alleged that the principal obligor had fully accounted for all sums received by him, and that he had paid over the whole amount, and tendered an issue, which was duly joined by the plaintiffs.

The chief question presented for decision was whether the principal defendant had retained larger sums than he was entitled to receive as compensation during the period he held the office of navy agent. He charged as commissions for the month of September, 1857, the sum of $351.91; but the department holding that his maximum compensation was only at the rate of $3,000 per annum, refused to allow more than $250 for that month. The balance of the account was accordingly disallowed, and he was directed to debit himself with the difference in his next account, and the agreed statement showed that he complied with the direction. The agreed statement also showed that his disbursements constantly exceeded $2,000 per quarter, so that under the rule adopted by the department he was entitled to the admitted maximum rate of compensation. Conforming to that rule, the incumbent subsequently, as it appeared, stated his accounts with the department at the end of each quarter of the calendar year, claiming $750 for the quarter until the first quarter of the year 1861; and the accounts as rendered and settled showed that he was allowed that sum quarter yearly as compensation up to that time. When he rendered his account for the first quarter of the year 1861, he presented a claim for $2,000 as commissions, instead of $750, as previously charged, but the department rejected the excess and allowed only the last-mentioned amount. From the 1st of April, 1861, to the 10th of May, same year, when the defendant was suspended from office, he disbursed the sum of $6,320.81, for which he charged nothing in his account rendered to the department. The accounting officers of the treasury, however, allowed him therefor, in the adjustment of his accounts, two per cent, amounting to $126.46, as commissions. The amounts so allowed, to wit, $750 and $126.40, were deducted from the $2,000, as charged in his account, and the balance was disallowed. The adjustment as made left the defendant the debtor of the United States to the amount of $1,123.60, and at the close of his term of service the accounting officers of the treasury reported that sum

as due from him to the United States. Pursuant to that adjustment, the fourth auditor of the treasury, on the 13th of August, 1861, notified the defendant of the amount so found to be due. This notice was substantially repeated on the 16th of April, 1862, and on both occasions he was directed to pay the amount into the treasury as part and parcel of the public money. Neither of the demands having been complied with, the department added interest to the sum reported to be due, amounting to $73.77. The primary claim of the plaintiffs was for those two sums, amounting in the aggregate to $1,197.37, at the time when the adjustment was made. The commissions allowed and actually paid the defendant while he was in office amounted to $10,876.40, exclusive of the sum which was disallowed in his last account renderd to the department. Payment of the sum reported as due having been refused by the defendant, the accounting officers of the treasury recharged to him the whole amount of the commissions received by him while he was in office, and the plaintiffs claimed to recover that amount, in addition to the sum and interest thereon reported to be due in the adjustment of the last account. On the other hand, it was claimed that the principal defendant was entitled to retain the whole sum reported to be due, in addition to what he had previously received, and it was denied that the plaintiffs had any pretence of right to recharge him with the commissions which had been properly adjusted, allowed, and paid by the authorized agents of the government.

C. W. Rand, U. S. Dist. Atty.

The statute of March 3, 1855 (10 Stat. 676), virtually makes the office of navy agent a salaried one, and a pro rata allowance for the portion of the year he holds the office is all that he can legally claim. Hoyt v. U. S., 10 How. [51 U. S.] 109. It is so with collectors and officers of the customs. 9 Stat. 3, § 1. The language of the statute is plain. Navy agents receive a certain per cent commission on the amount disbursed until compensation reaches $3,000 per annum, not until it reaches $2,000 for six months, or $3,000 for eight months and ten days, as defendants claim, but clearly only until the amount retained gives the officer a compensation at the rate of $3,000 a year. U. S. v. Dickson, 15 Pet. [40 U. S.] 141, and U. S. v. Pearce [Case No. 16,021] are founded on statutes different in their language and scope from the one under consideration. The latter case bears more directly upon the case now at bar, and by the statute of May 7, 1822 (3 Stat. 693, 694), upon which that case was based, congress evidently did not contemplate the construction put upon it by the court, whether its language warranted that construction or not, for they corrected that construction and virtually reversed the decision of the court by the statute of February 11, 1846 (9 Stat. § 1, p.

3.) The acquiescence of Mr. Wendell in the mode of accounting adopted by the treasury department, which is actually required by the statute of February 11, 1846, in the case of collectors and other officers of the customs, is an implied admission against him, and against the position he now assumes. 1 Greenl. Ev. § 197; Allen v. McKeen [Case No. 229]; Peele v. Merchants' Ins. Co. [Id. 10,905].

J. S. H. Frink, for defendants.

The act of March 3, 1855, graduates the compensation of these officers to the amount of labor performed and the responsibilities incurred by them. The only limitation is, that they shall not receive more than a fixed sum "per annum" (during the year), as we translate it. Until their commissions reach the sum of $3,000, they are entitled to calculate them at the rate prescribed by law, and to retain them for their own use, so far as their disbursements will justify it. They have performed the labor and incurred the responsibility for which congress intended to compensate them at a determined rate; and the reward becomes theirs as soon as thus earned. It is the quantity of the service, and not its period which the law contemplates, subject only to the limitations suggested. U. S. v. Dickson, 15 Pet. [40 U. S.] 165; U. S. v. Pearce [Case No. 16,021]; U. S. v. Edwards [Id. 15,026]; U. S. v. McCarty [Id. 15,657]. On estimating the amount of commissions, to be allowed navy agents "per annum," the better rule seems to be that they are to be calculated by the official, and not the fiscal or calendar year. Now in applying these well-considered opinions of the court to the case at bar, we submit, that Mr. Wendell has held twice the office of navy agent, between the 1st of September, 1857, and the 10th of May, 1861, under entirely distinct appointments. His first commission, under the presidential appointment, during the recess of the senate, continued until the next session of the senate; his subsequent nomination to the senate, and appointment with their assent and confirmation, continued until he was superseded in 1861. See McAffee v. Russell, 29 Miss. 84; U. S. v. Le Baron, 19 How. [60 U. S.] 74; Mullikin v. State, 7 Blackf. 77. We submit, then, that Mr. Wendell is entitled to compute his commissions for any period of a year, according to the amount of his disbursements; that these commissions become his, as soon as the disbursements are made; that the established method of computing his disbursements is for the official year; that he is to estimate his disbursements for two terms of office; that his disbursements have been sufficiently large to cover the sum now sought to be recovered, as part of his commissions, in addition to that already received; and that he has not waived any right, thus to compute his commissions. If, however, we concede the position of the plaintiffs, that these dis-

bursements are to be reckoned by the calendar or fiscal year, but still adhere to the decided cases, that Mr. Wendell's compensation is to be determined up to a certain sum, solely by the amount of his disbursements, and not by the time occupied in making them, then the computation is more favorable to us.

The plaintiffs further claim that if any sum is found due by the court from defendant, it works a forfeiture of his previously acquired commissions during the entire term of his service. 1 Stat. 512, § 1. To this the following suggestions are made: It is a penal act, and should be construed strictly. The construction now sought to be put upon it would not effect the intentions of its authors. It was intended as a penalty for wilful detention of a balance due, and not as a check to a judicial determination of the rights of receivers of public moneys; otherwise it would prevent judicial inquiry, in all cases raising a doubt as to the right to retain a sum reported to be due, because the risk of forfeiture would be so disproportionate to the claim that a public officer could ill afford to litigate his rights. The whole object of a penal statute is to punish some wrongful act, wilfully committed. And in another view, the construction given this act by the plaintiffs would work great injustice. Suppose a large balance to be reported as due from an officer to the United States by the auditor of a department. The officer, believing that he is authorized in so doing, retains it after demand, and it is litigated. It is adjudged that the greater portion of the sum has been lawfully retained, but judgment is recovered by the United States against such officer for a small sum in excess of the sum he had the right to withhold. If the theory of the plaintiffs is true, he has forfeited by his partially successful attempt to establish his right, the whole of his commissions for the service of years. Under the rule governing the construction of penal statutes, it ought not to receive so unjust an interpretation as this. And if the court should be of the opinion that there can be any forfeiture under the circumstances of the case at bar, we pray its consideration as to whether there can be any forfeiture, unless the full balance reported to be due is recovered by the plaintiffs; because if a partial recovery is had, the right and wrong of the matter is equally balanced. Both parties are right and both wrong. The defendant could not have paid over the entire sum reported to be due, without relinquishing a portion of his salary beyond all recovery. We respectfully invite the court to consider whether the commissions referred to in the statute, do not mean the commissions upon the sum retained only. Such a rule would be more consistent with the equities between the parties than the one sought

to be established by the plaintiffs, and the language of the law would seem to justify it. The language of the act is substantially that the commissions and interest shall be forfeited. It is not contended that the interest is upon any other sum than the one detained; and in fact any other view of it would be nonsensical. The commissions forfeited are to be upon the same sum as the interest, and we submit that the forfeiture of both commissions and interest is limited to those accruing on the sum detained.

CLIFFORD, Circuit Justice. This controversy has arisen from a difference of opinion as to what was the measure of compensation to which the principal defendant was entitled. The condition of the respective bonds is that the incumbent in the office shall faithfully discharge all his duties as navy agent for the port where he was appointed. A doubt cannot be entertained that the officer, under that condition, was obliged to account for and pay over all public money which came to his hands, except what he was entitled to retain as compensation for his services. The question presented, therefore, cannot be satisfactorily solved, without first ascertaining what sum the incumbent was lawfully entitled to retain as compensation.

Navy agents were first authorized to be appointed by the third section of the act of the 3d of March, 1809; and the same section provides that their compensation shall not in any instance exceed that allowed to the purveyor of public supplies. 2 Stat. 536; Browne v. U. S. [Case No. 2,036]. They are described in the section authorizing their appointment, not in terms as navy agents, but as agents appointed either for the purpose of making contracts, or for the purchase of supplies, or for the disbursement, in any other manner, of moneys for the use of the navy of the United States. U. S. v. Cutter [Id. 14,-911.] Such agents receive and disburse large sums of money, and they are required by law to make monthly returns, in such form as may be prescribed by the treasury department, of the moneys received and expended during the preceding month, and of the unexpended balance in their hands. 2 Stat. 536. Their term of office is for four years, removable at pleasure; and such appointments are required to be submitted to the senate for confirmation. 3 Stat. 582; 5 Stat. 703. The provision for their compensation as originally enacted, remained unchanged until the 3d of March, 1855, when the act was passed which gives rise to the present controversy. 10 Stat. 676. An express provision is made by that act, that in lieu of $2,000 per annum, the maximum compensation now allowed by law to navy agents, there shall be allowed two per centum commission on the first $100,000, or under, dis-

bursed by them, and one per centum on every succeeding $100,000 disbursed by them, until the compensation reaches $3,000 per annum, which amount shall be the maximum compensation for such agents. Certain provisos are also annexed to the section, which it is not important to notice at the present time. Statutory regulations can hardly be clearer or more explicit than is the language of the section upon the subject under consideration. The compensation of the officers named cannot exceed the sum of $3,000 for the services of one year. Attention to the language employed will show, that the maximum is in terms based on the period of one year, and in point of fact upon nothing else, because, let the amount be ever so great, the compensation of the officer cannot exceed the yearly sum of $3,000. The amount disbursed does not determine the maximum, but only the proportion of the maximum to which the officer is entitled, as is evident from the fact that the excess of one year cannot aid the deficiency of another. The maximum compensation is fixed by law at $3,000 per annum, and the reference undoubtedly is to the calendar year, as is obvious from the fact that the allowance of the per centum, that is, the one per centum or two per centum, as the case may be, is continued until the compensation reaches the sum of $3,000. The compensation per annum, therefore, is the rule of decision, and not per quarter, nor for any other legal subdivision of the year. Yearly disbursements, as ascertained by the monthly accounts, furnish the means of computing the yearly compensation of the officer, and of determining what proportion of the maximum he is entitled to receive for that period of time, subject to two important limitations prescribed by law; that is to say, that the compensation cannot exceed $3,000, and, that the act prescribing the maximum shall not be so construed as to reduce the salary to which any navy agent was entitled under previous laws.

The time of service and the amount disbursed, are the data for computing the amount of the compensation for any fractional portion of the year, because the maximum being based on an entire calendar year, the proportion of it due to the officer, if earned, can only be determined by ascertaining the proportion of the year which has elapsed. Where officers of the United States, entitled to a yearly compensation are superseded within the year, the general rule is that they are entitled to a pro rata compensation. Reference is made by the defendants to the case of U. S. v. Dickson, 15 Pet. [40 U. S.] 141, where a different rule was applied, but in the judgment of this court, the rule there prescribed is not applicable in this case. Hoyt v. U. S., 10 How.

[51 U. S.] 143. The contrary rule is the correct one in the settlement of accounts with collectors and all other revenue officers, and with ambassadors and ministers plenipotentiary, and perhaps, at the present day, with all other-persons holding office under the federal government. 9 Stat. 3; 11 Stat. 52. The act of the 11th of February, 1846, provides that collectors and all other officers of the customs, serving for a less period than one year, shall not be paid for the entire year, but shall be allowed in no case more than a pro rata of the maximum compensation of said officers respectively, for the time only which they actually serve as such collectors or other officers, whether the same be under one or more appointments, or before or after confirmation. A special reference is also made by the defendants to the case of U. S. v. Pearce [Case No. 16,021]; but it is a sufficient answer to that case, to say that the act of congress first referred to, passed since the date of that decision, establishes a different rule.

The conclusion, therefore, upon this branch of the case, is that the accounts of the principal defendant, so far as respects the balance of $1,123.60, reported to be due, and which on the 30th of August, 1861, he was directed to deposit to the credit of the treasury, were correctly adjusted by the accounting officers of the department, and that the plaintiffs are entitled to recover for that amount, together with interest on the same from the date of settlement.

The second proposition of the plaintiffs is that the principal defendant having refused to deposit the balance reported to be due, as directed by the proper officer of the department, they, the plaintiffs, were authorized to recharge the whole amount of the commissions previously allowed to him during the whole period of his service in that office. The claim is based upon the first section of the act of the 3d of March, 1797, which in effect provides that when a person accountable for public money shall neglect or refuse to pay into the treasury the sum or balance reported to be due, upon the adjustment of his account, it shall be the duty of the comptroller to institute suit for the recovery of the same, adding to the sum stated to be due, the commissions of the delinquent; and the act declares that the same shall be forfeited in every instance where suit is commenced and judgment is obtained thereon. 1 Stat. 512. But the proposition cannot be sustained, because the whole amount recharged had been lawfully and conclusively adjusted and allowed to the defendant. The "commissions of the delinquent" are only such as are pending, and are not such as have been paid to the officer, under a final adjustment of his accounts. Where suit is commenced under the circumstances described in the provision, all un-

settled and pending commissions are to be adjudged forfeited in case judgment is obtained in favor of the United States. Addition may be made to the sum reported to be due of the unsettled commissions in the hands of the delinquent, but it is not the purpose of the act to reopen accounts fairly and conclusively adjusted and settled. Instances may be found where the same person has held a particular office for forty years, and if the proposition be correct, a dispute in the settlement of his account for the last quarter of the fortieth year would open the accounts for the entire period he held the office. Such a construction of the act of congress cannot be adopted, and the proposition is accordingly overruled. Referring to the agreed statement, it will be seen that the whole amount reported to be due from the principal defendant accrued under the bond declared on in the second suit. The plaintiffs are entitled to judgment in the second suit, but in the first suit judgment must be entered for the defendants. Costs are allowed in the second suit but the United States are never liable to costs.